**STATE of Missouri, Plaintiff–Respondent,**

v.

**Will Hodges WOODS, Defendant–Appellant.**

**Will Hodges WOODS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 17287, 18009.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 2, 1993.

Lew A. Kollias, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Judge.

Appellant (Defendant) was convicted, after a jury trial, of burglary in the first degree, § 569.160,[1] and stealing over $150, § 570.030. Prior to the date set for sentencing, Defendant absconded from the New Madrid County Jail. Approximately seven months after his original sentencing date, he was returned and sentenced as a prior offender to the concurrent terms of fifteen years for burglary and five years for stealing. His direct appeal is Case No. 17287.

After sentencing, Defendant filed a *pro se* motion under Rule 29.15 [2] to vacate, set aside or correct the judgment or sentence. The motion was amended after appointment of counsel and was subsequently denied. Defendant's appeal from denial of that motion is Case No. 18009.

These two appeals were consolidated but will be addressed separately in this opinion. Before doing so, we address the State's contention that both appeals should be dismissed by applying the "escape rule."

█ Missouri courts have previously dismissed the appeals of defendants who escaped after being convicted. *State v. Woods*, 812 S.W.2d 267 (Mo.App.1991); *State v. Thomas*, 792 S.W.2d 66 (Mo.App.1990); *State v. Wright*, 763 S.W.2d 167 (Mo.App.1988). The United States Supreme Court has recently indicated that the "escape rule" should not be automatically applied by appellate courts when the escape occurred before sen-

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

2. All references to rules are to Missouri Rules of Court, V.A.M.R.

tencing and had no impact on the appellate process. *Ortega–Rodriguez v. United States,* 507 U.S. ——, ——, 113 S.Ct. 1199, 1208, 122 L.Ed.2d 581, 597 (1993). In those circumstances, the sentencing court is usually the tribunal most directly affected by the escape and should be the one to consider application of the "escape rule." *Id.* at ——, 113 S.Ct. at 1209. In the instant case, the trial court acknowledged that the "escape rule" was available to deny relief to Defendant on his Rule 29.15 motion but chose, instead, to decide the issues on the merits. We also choose to do the same.

## APPEAL NO. 17287

Defendant presents two points on this appeal: (1) the State's peremptory challenge of a black juror was in violation of the equal protection provisions of the United States Constitution and Missouri Constitution; and (2) the trial court erred in overruling his motion to suppress a television set and also by overruling his objections[3] and in not granting a mistrial when witnesses identified it at trial.

## POINT I

■ Defendant's argument that the peremptory challenge of a black juror violated his constitutional rights is based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The *Batson* case condemned purposeful racial discrimination in the selection of a jury as a violation of the equal protection provisions of the Fourteenth Amendment to the United States Constitution. That decision has been interpreted as involving a three-step process: (1) defendant must first raise an objection under *Batson* concerning one or more specific venirepersons stricken by the State and must identify the cognizable racial group to which the venireperson belongs; (2) the State must come forward with a reasonably specific and clear explanation for the strikes which is race-neutral; and (3) defendant must show that the State's explanation for making the strikes was merely pretextual and that the

strikes were racially motivated. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). *See also State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987).

In the instant case, Defendant is black. The venire included several blacks, four of whom were ultimately selected to serve on the jury. One black male, however, was stricken by the State's use of one of its six peremptory challenges. Defendant's counsel challenged that strike under *Batson* and requested that the State be required to state neutral reasons for the strike that were not pretextual or discriminatory.

The State explained that the reason for striking the venireperson in question was because he was a middle-aged male, and the bulk of the people stricken met that description. The trial court noted that all of the other peremptory strikes employed by the State involved middle-aged men as well.

■ It is not required that the State's explanation rise to the level that would support a challenge for cause. *Batson v. Kentucky,* 476 U.S. at 97, 106 S.Ct. at 1723–1724, 90 L.Ed.2d at 88; *State v. Parker,* 836 S.W.2d at 934. Prosecutors are still permitted to use "horse sense" and "play hunches" in the process of jury selection so long as the factors they rely on are not racially motivated. *State v. Kempker,* 824 S.W.2d 909, 911 (Mo. banc 1992). For the explanation to be sufficient, it need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried. *Batson v. Kentucky,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. The explanation will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Hernandez v. New York,* 500 U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405–406 (1991). In the instant case, the State's explanation was not inherently discriminatory and is, therefore, deemed race-neutral. *State v. Parker,* 836 S.W.2d at 934.

■ The trial court was required to determine if Defendant had established purposeful discrimination. *State v. Parker,* 836 S.W.2d

---

**3.** The record, however, reflects that no objections were made when the television was identified at

trial.

at 934. In order to succeed with a *Batson* challenge, Defendant must show that the reasons given by the State for exercising the peremptory challenge were merely pretextual and that they were actually motivated by racial considerations. *Id.* At this stage, the focus is on the plausibility of the State's explanation, considering the totality of the facts and circumstances of the case, with much of the determination turning on the evaluation of intangibles such as credibility and demeanor. *Id.* This means that trial judges are vested with considerable discretion in determining whether the defendant established discrimination. *State v. Parker,* 836 S.W.2d at 934, citing *Hernandez v. New York,* 500 U.S. at ——, 111 S.Ct. at 1869, and *State v. Antwine,* 743 S.W.2d at 65–66.

▆▆▆ Facts and circumstances which either detract from or lend credence to the State's explanations for its use of peremptory strikes are relevant. *State v. Parker,* 836 S.W.2d at 939–940. In the instant case, the trial court agreed that the State's strikes were all directed to middle-aged males. In addition, the fact that only one of the six venirepersons which the State struck was black and that four blacks served on the jury can also be relevant factors indicating that race was not the motive for the challenged strike. *State v. Parker,* 836 S.W.2d at 940.

▆▆▆ Another relevant factor in the instant case was Defendant's failure to allege racial motivation after the State gave its explanation for the strike in question. In making the *Batson* objection, Defendant's counsel stated that the strike was "perhaps" racially motivated because both the Defendant and the stricken venireperson were black. He then said, "it is encumbent [sic] upon the State to come up with basically neutral reasons for the strike" that are not pretextual or discriminatory. Defendant made no further record concerning the matter, however, after the State's explanation. It was Defendant's obligation to demonstrate that the explanation was pretextual and not the true reason for the peremptory challenge. *State v. Antwine,* 743 S.W.2d at 64; *State v. Jackson,* 809 S.W.2d 77, 81 (Mo.App.1991).

▆▆▆ Defendant now, however, contends that the explanation was pretextual. A challenge under *Batson* should be made before the venire is excused and the jury sworn so the trial court can determine whether a constitutional violation has occurred while there is time to correct the error by disallowing the strike in question. *State v. Parker,* 836 S.W.2d at 935–936. The matter is not preserved for review where a defendant first challenges the explanation as pretextual in the appellate court. *State v. Jackson,* 809 S.W.2d at 81. If Defendant made no effort to show the trial court that the reasons given were pretextual, and the trial court in fact found they were not, this court is hardly in a position to disagree. *Id.*

▆▆▆ Findings made by the trial court in response to a *Batson* challenge are findings of fact which are given great deference and are not to be set aside by a reviewing court unless they are clearly erroneous. *State v. Antwine,* 743 S.W.2d at 66. Such findings are clearly erroneous only when this court is left with a definite and firm impression that a mistake has been made. *Id.* If, as here, the trial court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse. *Id.*

Notwithstanding the fact that this issue was not properly preserved, the record does not indicate that the trial court's findings were clearly erroneous. This point is, therefore, denied.

### POINT II

In his second point, Defendant argues the trial court should have sustained his motion to suppress a television set. He also contends that the court should have sustained his objections and declared a mistrial, *sua sponte,* when witnesses identified the television at trial. This argument is based upon Defendant's allegation that the television was unlawfully seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 15 of the Missouri Constitution.

The television set in question was seized at the apartment of Tongia Harris. Evidence at the hearing on Defendant's motion to sup-

press indicated that Defendant had been dating Tongia and periodically stayed at her apartment. Tongia's mother was employed at the Cape Girardeau Police Department as a maintenance worker. A detective with the police department learned of Defendant's relationship with Tongia and that she had a television. Tongia's mother took the detective to Tongia's apartment after he asked if it would be possible to look at the TV to see if it was the one stolen. The detective had no search warrant but, according to his testimony, Tongia showed him the TV and told him that Defendant had left it with her. He further testified that he took the TV with Tongia's permission.

Tongia, on the other hand, testified at the suppression hearing that Defendant had a key to her apartment and stayed there periodically. She testified that her mother had earlier told her that Defendant was in jail; that the police were getting a search warrant to search her home for the TV which had been stolen; and if she did not let the police look at the TV and take it they would arrest her for receiving stolen property and take her children.

■■■ Defendant did not object to the identification of the television at trial, did not request a mistrial, and did not preserve the matters raised in this point in his motion for new trial. Accordingly, this point was not preserved for appellate review. *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974); *State v. Lord*, 286 S.W.2d 737, 741 (Mo.1956). Matters not preserved for appellate review are reviewable only for plain error. *State v. Ward*, 807 S.W.2d 225, 226 (Mo.App.1991). Relief for plain error will be granted only when error so substantially affects the rights of an accused that a manifest injustice or miscarriage of justice will result if left uncorrected. *State v. Phelps*, 816 S.W.2d 227, 229 (Mo.App.1991). Although not required to do so, we review this point under the plain error standard.

■■■ In reviewing the denial of a motion to suppress, we are required to consider all facts and inferences favorable to the trial court's ruling and, if there is sufficient evidence to support that ruling, we must disregard contrary evidence or inferences. *State*

*v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985). It is not in our province to substitute our discretion for that of the trial court, but instead we must decide only whether there was adequate evidence to support the trial court's action. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). In making that review, we are mindful that the weight of the evidence and the credibility of the witnesses is for the trial court's determination. *Id.* Defendant has the burden of showing that his constitutional rights were violated by the seizure, and the State has the burden to justify the warrantless search and demonstrate that it falls within an exception to the requirement of a search warrant. *Id.*

■■■ A warrantless search can be valid if made with consent which is freely and voluntarily given. *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982). In the instant case, consent was granted by Tongia Harris. The evidence established that the television was located in her apartment which was under her control even though Defendant had a key to the apartment and stayed there "off and on." Consent to search may be given by a party who possesses joint access or control of the premises or the effects sought to be searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974); *State v. Blair*, 638 S.W.2d at 750; *State v. White*, 755 S.W.2d 363, 366 (Mo.App.1988).

■■■ Whether a consent to search was voluntary or the product of duress or coercion is to be determined from the totality of all surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854, 862–863 (1973); *State v. Stolzman*, 799 S.W.2d 927, 936 (Mo.App.1990). In the instant case, Defendant contends that the State failed to sustain its burden to show Tongia's consent was voluntary. He argues the evidence shows that Tongia's mother told her that if she did not consent, the police would bring a warrant for her arrest and would take her children from her, thus demonstrating that her consent was not voluntary. There was no evidence at the suppression hearing that any such statements were made at the be-

hest of the State. Tongia's testimony confirmed the testimony of the detective that she, at his request, showed him the television and permitted him to take it into custody. According to her testimony, the only threat or promise made to her when the detective took the TV was that she would not have to come to court. There was no testimony that the detective was hostile or demanding, that weapons were displayed, or that he made any false or misleading statements. In fact, the detective's testimony was uncontroverted that he told Tongia the reason he wanted to see and take the television. The evidence was sufficient to support the trial court's order overruling Defendant's motion to suppress. The record does not indicate that a manifest injustice or miscarriage of justice occurred so as to justify relief under the plain error standard of review.

Point II is, therefore, denied.

### CASE NO. 18009

■ Defendant also appeals from the trial court's denial of his Rule 29.15 motion. He alleges he was denied effective assistance of counsel because of trial counsel's failure to object to in-court identifications of the seized television set and failure to raise denial of his motion to suppress in the motion for new trial.[4] In reviewing denial of postconviction relief, we are limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

■ A defendant, in order to prevail on a claim of ineffective assistance of counsel, must show both: (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that he was prejudiced thereby. *Sanders v. State*, 738 S.W.2d at 857, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant had the burden of proving these grounds by a preponderance of the evidence. Rule 29.15(h).

■ A court need not, however, determine the performance component of the test

before examining for prejudice. *Sanders v. State*, 738 S.W.2d at 857. To satisfy the requirement of prejudice, Defendant must show a reasonable probability that the result would have been different but for the errors of trial counsel (as opposed to showing the errors had some conceivable effect on the outcome). *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2067–2068, 80 L.Ed.2d at 698; *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989).

■ Defendant argues in his brief that he was prejudiced by trial counsel's failure to object to the identification of the television because "the jury linked appellant to the set," and that failure to preserve the suppression issue resulted in it being reviewable only for "plain error." As we understand his argument, Defendant contends that the issue which should have been preserved by the objection at trial and in the motion for new trial was that the television had been illegally seized. The motion court, however, found that Tongia Harris had authority to consent to the seizure of the television, that she did consent to its seizure, that her consent was voluntary, and that an objection at trial to its identification would have been without merit and overruled. Failure to pursue objections to evidence or arguments which would have been rejected does not constitute ineffective assistance of counsel. *State v. Leisure*, 838 S.W.2d 49, 59 (Mo.App.1992).

■ Additionally, there is a strong presumption that counsel's conduct was reasonable and within the realm of trial strategy. *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695. In the instant case, Defendant's trial counsel failed to object when the television was introduced during the testimony of the alleged victim. Trial counsel then, however, cross-examined the witness and established that the television had no markings permitting the witness to positively identify it as hers.

In the instant case, we are unable to say, from our review of the record, that the motion court's findings with reference to the

4. Defendant's counsel on this appeal and his trial counsel are not the same.

Rule 29.15 motion were clearly erroneous and, therefore, this point is denied.

The judgment of the trial court and the order of the motion court are affirmed.

FLANIGAN and PREWITT, JJ., concur.